## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

|  |  |  |
|---|---|---|
| **MELISSA ANN BOBO and** | ) | |
| **SHARON JEAN COX, as** | ) | |
| **Co-Personal Representatives of the** | ) | |
| **Estate of Barbara Bobo, deceased,** | ) | |
|  | ) | |
| **Plaintiffs,** | ) | |
|  | ) | |
| **vs.** | ) | **Civil Action No. CV 12-S-1930-NE** |
|  | ) | |
| **TENNESSEE VALLEY** | ) | |
| **AUTHORITY,** | ) | |
|  | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION AND ORDER

Barbara Bobo, now deceased, commenced this action against nine defendants,[1]

eight of whom were dismissed pursuant to stipulations for dismissal,[2] leaving only her

---

[1] *See* doc. no. 1 (Complaint), asserting claims against: (*i*) Agco Corporation, *formerly known as* Allis Calmers Company, *sued as successor to* Massey Ferguson Limited ("Agco"); (*ii*) CBS Corporation, *formerly known as* Viacom, Inc., *sued as successor-by-merger to* CBS Corporation, *formerly known as* Westinghouse Electric Corporation ("CBS"); (*iii*) Conopco, Inc., *doing business as* Unilever United States, Inc., *sued individually and as successor-by-merger* to Helene Curtis Industries, Inc. ("Conopco"); (*iv*) Consolidated Aluminum Corporation, *also known as* Conlaco, Inc. ("Consolidated Aluminum"); (*v*) Dana Companies LLC, *sued individually and as successor-in-interest to* Victor Gasket Manufacturing Company ("Dana"); (*vi*) Ford Motor Company ("Ford"); (*vii*) Metropolitan Life Insurance Company ("MetLife"); (*viii*) TVA; and (*ix*) Unilever United States, Inc., *sued individually and as successor-by-merger to* Helene Curtis Industries, Inc. ("Unilever").

[2] The following claims were dismissed in accordance with stipulations of dismissal filed by Mrs. Bobo and the defendants noted: doc. no. 18 (Ford); doc. no. 19 (Order Dismissing Ford); doc. no. 44 (AGCO); doc. no. 45 (Order Dismissing AGCO); doc. no. 47 (Conopco and Unilever); doc. no. 48 (Order Dismissing Conopco and Unilever); doc. no. 53 (Consolidated Aluminum); doc. no. 56 (Order Dismissing Consolidated Aluminum); doc. no. 60 (CBS); doc. no. 61 (Order Dismissing CBS); doc. no. 62 (Dana Companies); doc. no. 64 (Order Dismissing Dana Companies); doc. no. 78 (MetLife); doc. no. 79 (Order Dismissing MetLife).

claims against the Tennessee Valley Authority ("TVA").  Plaintiffs, who are the co-personal representatives of the estate of Mrs. Bobo,[3] maintain a variety of claims against TVA, including a premises liability claim (Count Seven).[4]  The action is presently before the court on TVA's motion for summary judgment.[5]  For the reasons stated below, that motion is due to be denied.

## I.  STANDARD OF REVIEW

Federal Rule of Civil Procedure 56 provides that summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).[6]  "[T]he

---

[3] *See* doc. no. 179 (Order substituting parties).

[4] *See* doc. no. 171 (Amended Complaint). Plaintiffs also assert claims against "all Defendants" under the Alabama Extended Manufacturer's Liability Doctrine (Count One), negligence (Count Two), strict liability (Count Three), breach of warranty (Count Four), breach of the implied warranty of fitness for a particular purpose (Count Five), and breach of the implied warranty of merchantability (Count Six). *Id.* However the Amended Complaint only mentions TVA specifically regarding a premises liability claim. *Id.* at 17.  Moreover, in the paragraph identifying TVA, the Amended Complaint alleges that TVA "owned the premises where [Barbara Bobo's] deceased husband worked with asbestos-containing equipment and/or products and thereby exposed [Mrs. Bobo] to asbestos dust." *Id.* at 2.  Although TVA asserts that "[p]laintiff's claim sounds in negligence and does not arise under a theory of products liability or strict liability," doc. no. 163 at 2, it does not move for summary judgment on those issues except to the extent plaintiffs cannot prove causation or duty. The court will only address the issues TVA has placed before it.

[5] Doc. no. 122.

[6] Rule 56 was recently amended in conjunction with a general overhaul of the Federal Rules of Civil Procedure.  The Advisory Committee was careful to note, however, that the changes "are intended to be *stylistic only*."  Adv. Comm. Notes to Fed. R. Civ. P. 56 (2007 Amends.) (emphasis supplied).  Consequently, cases interpreting the previous version of Rule 56 are equally applicable to the revised version.

plain language of Rule 56(c) mandates the entry of summary judgment, after adequate

time for discovery and upon motion, against a party who fails to make a showing

sufficient to establish the existence of an element essential to that party's case, and

on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*,

477 U.S. 317, 322 (1986).

> In making this determination, the court must review all evidence and make all reasonable inferences in favor of the party opposing summary judgment.

> The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case. The relevant rules of substantive law dictate the materiality of a disputed fact. A genuine issue of material fact does not exist unless there is sufficient evidence favoring the nonmoving party for a reasonable [factfinder] to return a verdict in its favor.

*Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000) (*en banc*) (internal

quotations and citation omitted) (bracketed text suppled).

## II. SUMMARY OF FACTS[7]

---

[7] The following statements are the "facts" for summary judgment purposes only, and may not be the actual facts. *See Cox v. Adm'r U.S. Steel & Carnegie Pension Fund*, 17 F.3d 1386, 1400 (11th Cir. 1994). The court has gleaned these statements from the parties' submissions of facts claimed to be undisputed, their respective responses to those submissions, and the court's own examination of the evidentiary record. This summary is also partly borrowed from the court's published memorandum opinion entered on October 29, 2013, in connection with TVA's motion for summary judgment on discretionary function grounds. Doc. no. 174 (Memorandum Opinion and Order). All reasonable doubts about the facts have been resolved in favor of the nonmoving party. *See Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002).

Barbara Bobo never worked for TVA as an employee, a contractor, or sub-contractor.  Moreover, she was never permitted to enter the Authority's "Browns Ferry Nuclear Plant" located on the North shore of the Tennessee River near Athens, in Limestone County, Alabama.[8]  Instead, the claims that she asserted in this action are derivative:  that is, they grow out of the exposure of her late husband, James Bobo, to asbestos and asbestos-containing products while he worked in that facility.[9]

### A.   James Bobo's Exposure to Asbestos

James Bobo was employed by TVA as a laborer at its Browns Ferry Nuclear Plant for more than twenty-two years, from April 15, 1975 until September 7, 1997.[10]  During that time, TVA used thermal pipe coverings, insulation, roofing cement, packing materials, and gasket packing materials containing asbestos.[11]  Laborers such

---

[8] Doc. no. 70 (Defendant's Brief in Support of Summary Judgment on Discretionary Function Grounds), at 3.  The Browns Ferry plant was TVA's first nuclear power plant, and the largest in the world when it began operation in 1974.  It was the first nuclear plant in the world to generate more than 1 billion watts of power.  The three operating units at Browns Ferry are boiling water nuclear reactors.  They produce electricity by splitting uranium atoms:  *i.e.*, the heat from that process boils water, thereby producing steam that is piped to turbines, which spin a generator to produce electricity.  *See, e.g.*, http://www.tva.gov/sites/brownsferry.htm (last visited Oct. 17, 2013).

[9] Doc. no. 83-3 (Deposition of Priscilla Carthen), at 16, 38; doc. no. 74 (Defendant's Brief in Opposition to Plaintiffs' Motion to Amend Complaint), at 8.

[10] Doc. no. 83-3 (Deposition of Priscilla Carthen), at 15, 20, 38.

[11] TVA's answers to interrogatories indicate that it purchased insulation containing asbestos for the Browns Ferry Nuclear Plant until at least 1980. Doc. no. 150-4 at 7-10. Steve Brown, a TVA employee, testified that there was still insulation containing asbestos at the Browns Ferry Nuclear Plant when he left in 1991. Doc. no. 150-7 at 16. Frank Mecke, another TVA employee, testified that he installed thermal insulation containing asbestos at the Browns Ferry Nuclear Plant. Doc. no. 150-5 at 11-12, 15, 17, 20, 44, & 53.

as James Bobo worked all over the nuclear facility, primarily performing clean-up duties, such as sweeping up insulation that had fallen on the floor.[12]  Occasionally, he would assist the insulators in such work; but, more often than not, Mr. Bobo was directed to clean up after the insulators had completed their duties by sweeping the insulation that had fallen on the floor.[13]  The act of sweeping generated airborne dust containing asbestos.[14] Significantly, Mr. Bobo did not change clothing at the end of each work day. Instead, he drove to his home wearing the same clothes that he had worked in during the day.[15]

### B.   Barbara Bobo's Exposure to Asbestos

Although Barbara Bobo, like many Americans above the age of fifty, probably was exposed to products containing some amount of asbestos at various times throughout her life, she alleged that she was involuntarily subjected to an excessive quantity of asbestos while laundering her husband's dusty work clothes at least twice each week throughout the years he worked for TVA at Browns Ferry.[16]   The

---

[12] Doc. no. 83-4 (Deposition of Jimmy Myhan), at 25-27.

[13] *Id.* at 60.  The laborers would clean up the insulation using brooms, rags, and mops.  *Id.*

[14] *Id.* at 61. Most of the insulation James Bobo worked with was white, doc. 83-4 at 46, the same color as the thermal insulation containing asbestos installed by Frank Mecke, doc. 150-5 at 18. Indeed, Dr. Martin Barrie, TVA's expert witness, testified that the insulation James Bobo swept up "probably was asbestos." Doc. 150-8 at 44.

[15] Doc. no. 83-4 (Deposition of Jimmy Myhan), at 72.

[16] Doc. no. 171 (Amended Complaint) ¶ 64.  Barbara Bobo states in her complaint that she experienced exposure to asbestos-containing friction products, as well as other asbestos products, from approximately the 1940s to the late 1950s as a result of her father, a farmer, performing

washroom in the couple's home was small.   The floor dimensions were only approximately four feet by five feet (20 square feet).[17]  Mrs. Bobo's practice was to pick-up the dirty clothing that her husband removed at the end of a work day, carry those clothes into the washroom, shut the door, empty the pockets, shake the articles, and then place them into the washing machine.[18]  She recalled inhaling "dust" while laundering her husband's clothes.[19]  She described the air of the laundry room as "[f]oggy. I just thought it was dust."[20]  She also said that the air became dusty when she dry-swept and mopped the washroom floor.[21]  However, Mrs. Bobo did not have personal knowledge that the dust in her husband's work clothes contained asbestos fibers, and she never tested for the presence of asbestos at her residence.[22]

A physician diagnosed Mrs. Bobo as suffering from "pleural mesothelioma" in November of 2011.[23]  "Mesothelioma" is defined as "a tumor derived from

---

maintenance on his tractors. *Id.* ¶ 12.  She was also alleges that she experienced non-occupational exposures because her husband worked daily with asbestos containing materials during his employment at Alabama Wire Plant in Florence, Alabama, from 1964 to 1975.  *Id.*  Additionally, she "used asbestos-containing stationary hair dryers during her career as a beautician" from 1976 through the decade of the 1990s.  *Id.  See also* doc. no. 83-1 (Deposition of Barbara Bobo), at 19.

[17] Doc. no. 83-1 (Deposition of Barbara Bobo), at 18.

[18] *Id.* at 19.

[19] *Id.* at 20.

[20] *Id.* at 19 (alteration supplied).

[21] *Id.* at 20.

[22] *Id.* at 41.

[23] Doc. no. 83-1 (Deposition of Barbara Bobo), at 40-41.

mesothelial tissue . . . . Malignant varieties [*e.g.*, *pleural* mesothelioma] are often the result of excessive exposure to asbestos." *Dorland's Illustrated Medical Dictionary* 1134 (30th ed. 2003) (alteration supplied).  "Pleural mesothelioma" is characterized by the same, generally-accepted treatise as "a malignant mesothelioma of the pleural space, often spreading widely and invading other thoracic structures; . . . It is usually fatal within one year." *Id.* at 1135.  Mrs. Bobo doubled that prognosis:  she died two years after her condition was diagnosed.[24]

### III.  DISCUSSION

TVA moved for summary judgment on the grounds that it did not owe Barbara Bobo a duty of care under Alabama tort law,[25] and that the personal representatives of her estate have not produced sufficient evidence to create a genuine issue of material fact as to the issue of whether Mrs. Bobo's exposures to asbestos originating from the Browns Ferry Nuclear Plant caused her mesothelioma.[26]

"In [a] premises-liability case, the elements of negligence are the same as those in any tort litigation:  duty, breach of duty, cause in fact, proximate or legal cause, and damages." *Lingefelt, et al. v. International Paper Co., et al.*, 57 So. 3d 118, 122

---

[24] Doc. no. 179 (Order substituting parties).

[25] In a diversity case, a federal district court is bound to apply state substantive law and federal procedural rules.  *See, e.g.*, *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, (1938); *National Distillers and Chemical Corp. v. Brad's Machine Products, Inc.*, 666 F.2d 492, 494-95 (11th Cir. 1982).

[26] Doc. no. 122 (TVA's motion for summary judgment).

(Ala. Civ. App. 2010) (alteration in original) (internal quotations omitted); *see also Sessions v. Nonnenmann*, 842 So. 2d 649, 651 (Ala. 2002).  The outcome of this case hinges on the elements of duty, causation in fact, and proximate causation, which the court addresses below.

### A.    Duty

TVA first contends that it owed no duty of care to Mrs. Bobo under Alabama law.[27]

It is black letter Alabama law "'that for one to maintain a negligence action the defendant must have been subject to a legal duty,' because 'where there is no duty, there can be no negligence.'"  *DiBiasi v. Joe Wheeler Electric Membership Corp.*, 988 So. 2d 454, 460 (Ala. 2008) (quoting *Thompson v. Mindis Metals, Inc.*, 692 So. 2d 805, 807 (Ala. 1997) (in turn quoting *Morton v. Prescott*, 564 So. 2d 913, 915 (Ala. 1990)); *City of Bessemer v. Brantley*, 65 So. 2d 160, 165 (Ala. 1953)).

Further, the determination of whether a duty exists is "'strictly a legal question to be determined by the court.'"  *DiBiasi*, 988 So. 2d at 460 (quoting *Pritchett v. ICN Medical Alliance, Inc.*, 938 So. 2d 933, 937 (Ala. 2006) (in turn quoting *Taylor v. Smith*, 892 So. 2d 887, 891-92 (Ala. 2004))).

Upon review of the relevant case law, TVA appears correct in its assertion that

---

[27] Doc. no. 128 (TVA's Brief in Support of Summary Judgment), at 1.

"no Alabama appellate court has issued an opinion regarding the availability of take-home claims under Alabama law."[28]   Thus, this court is tasked with determining whether Alabama would recognize a duty owed by premises-owners to non-employees in take-home exposure cases.

> "'In determining whether a duty exists in a given situation . . . courts should consider a number of factors, including public policy, social considerations, and foreseeability. *The key factor is whether the injury was foreseeable by the defendant.*'" *Patrick v. Union State Bank*, 681 So. 2d 1364, 1368 (Ala. 1996) (quoting *Smitherman v. McCafferty*, 622 So. 2d 322, 324 (Ala. 1993)). In addition to foreseeability, Alabama courts look to a number of factors to determine whether a duty exists, including "'(1) the nature of the defendant's activity; (2) the relationship between the parties; and (3) the type of injury or harm threatened.'" *Taylor*, 892 So. 2d at 892 (quoting *Morgan v. South Central Bell Telephone Co.*, 466 So. 2d 107, 114 (Ala. 1985)).

*DiBiasi*, 988 So. 2d at 461 (alterations and emphasis supplied).

Plaintiffs assert that, because the foreseeability of an injury is the "key factor" in determining whether a duty exists under Alabama law, *see Taylor*, 892 So. 2d at 892, *Patrick*, 681 So. 2d at 1368, Alabama would join a number of other state courts

---

[28]Doc. no. 128 (TVA's Brief in Support of Motion for Summary Judgment), at 20.  Plaintiffs contend that Alabama recognized a duty of care owed by premises-owners to non-employees in a take-home exposure case in which a wife sued asbestos manufacturers for injuries caused by her bystander exposure from laundering her husband's work clothes. *Galloway v. Keene Corp.*, 621 So. 2d 982, 982 (Ala. 1993).  Contrary to plaintiffs' contention, the Supreme Court of Alabama made no holding regarding the viability of take-home exposure claims because that issue was not before the court. *See id.* (jury verdict was entered against the wife, and she appealed the denial of her motion for a new trial); *see also Ex parte James*, 836 So. 2d 813, 818 (Ala. 2007) ("Arguments based on what courts do not say, logically speaking, are generally unreliable and should not be favored by the judiciary . . . .").

finding a duty owed to non-employees in take-home exposure cases based on the foreseeability of the injury. *See*, *e.g.*, *Simpkins v. CSX Corp.*, 929 N.E.2d 1257, 1263-64 (Ill. App. Ct. 2010) ("[W]e believe that it takes little imagination to presume that when an employee who is exposed to asbestos brings home his work clothes, members of his family are likely to be exposed as well.  Thus, the general character of the harm to be prevented was reasonably foreseeable.") (alteration supplied); *Satterfield v. Breeding Insulation Co.*, 266 S.W.3d 347, 367 (Tenn. 2008) (holding that the harm to the plaintiff was foreseeable, because she was regularly in contact with asbestos-contaminated work clothes for extended periods of time); *Olivo v. Owens-Illinois, Inc*., 895 A.2d 1143, 1149 (N.J. 2006) (holding that a premises owner owed a duty to spouses handling the asbestos-contaminated work clothing based on the foreseeable risk of harm arising from such exposures); *Zimko v. American Cyanamid*, 905 So. 2d 465, 483 (La. App. 2005) (same).

On the other hand, TVA contends that Alabama courts would not impose a duty on the basis of the forseeability of an injury alone, but would, instead, consider additional relevant factors including public policy, social considerations, the nature of the defendant's activity, the relationship between the parties, and the type of injury threatened. *See DiBiasi*, 988 So. 2d at 461. Thus, TVA argues that Alabama would follow the jurisdictions that have found no legal duty is owed to non-employees in

10

take-home exposure cases, based upon considerations of public policy.  *See*, *e.g.*,

*Campbell v. Ford Motor Co.*, 141 Cal. Rptr. 3d 390 (Cal. Ct. App. 2012) (concluding

that "a property owner has no duty to protect family members of workers on its

premises from secondary exposure to asbestos used during the course of the property

owner's business"); Kan. Stat. Ann. § 60-4905(a) (2012) ("No premises owner shall

be liable for any injury to any individual resulting from silica or asbestos exposure

unless such individual's alleged exposure occurred while the individual was at or near

the premises owner's property."); *Price v. E.I. DuPont De Nemours & Co.*, 26 A.3d

162, 170 (Del. 2011) (holding that there was no legal duty because the plaintiff did

not have a "special relationship" with the premises owner); *Boley v. Goodyear Tire

& Rubber Co.*, 929 N.E.2d 448, 453 (Ohio 2010) ("Pursuant to [an Ohio statute], a

premises owner is not liable in tort for claims arising from asbestos exposure

originating from asbestos on the owner's property, unless the exposure occurred at

the owner's property.") (alteration supplied); *In re Certified Question from

Fourteenth District Court of Appeals of Texas*, 740 N.W.2d 206, 222 (Mich. 2007)

("[W]e hold that, under Michigan law, defendant, as owner of the property . . . did not

owe to the deceased, who was never on or near that property, a legal duty to protect

her from exposure to any asbestos fibers carried home on the clothing of a member

of her household . . . .") (alteration supplied); *In re Eighth Judicial District Asbestos*

*Litigation*, 815 N.Y.S.2d 815, 817 (N.Y. Sup. Ct. 2006) (holding that employer did not owe duty of care to spouse of employee who contracted mesothelioma as a result of laundering her husband's asbestos-laden clothes); *CSX Transportation, Inc. v. Williams*, 608 S.E.2d 208, 210 (Ga. 2005) ("[W]e decline to extend on the basis of foreseeability the employer's duty beyond the workplace to encompass all who might come into contact with an employee or an employee's clothing outside the workplace.") (alteration supplied); *Adams v. Owens-Illinois, Inc.*, 705 A.2d 58, 66 (Md. Ct. Spec. App. 1998) (holding that a steel company did not owe a duty of care to an employee's wife to maintain a safe workplace for its employees).

According to TVA, the cases decided under the laws of New York, Georgia, and California are especially persuasive because the laws of those jurisdictions are similar to those of Alabama regarding issues of duty.[29] This court disagrees. There are several reasons for doing so. First, in deciding that no duty was owed to non-employees in a take-home exposure claim similar to the one asserted by Barbara Bobo, the Supreme Court of Erie County, New York, specifically stated that "[d]uty in negligence cases *is not defined by foreseeability of injury*." *In re Eighth Judicial District Asbestos Litigation*, 815 N.Y.S.2d at 939 ("Rather, foreseeability determines merely "the scope of the duty once it is determined to exist."") (quoting *Holdampf v.*

---

[29]Doc. no. 128 (TVA's Brief in Support of Motion for Summary Judgment), at 21.

*A.C. & S., Inc.*, 5 N.Y.3d 486, 493 (N.Y. 2005); *Hamilton v. Beretta U.S.A. Corp.*, 96 N.Y.2d 222, 232 (N.Y. 2002)). Second, while the Supreme Court of Georgia declined to extend an employer's duty to provide a safe workplace beyond its employees based on policy considerations, the court did not place the same emphasis on foreseeability that an Alabama court would. *See CSX Transportation, Inc.*, 608 S.E.2d at 210 ("[W]e decline to extend on the basis of foreseeability the employer's duty beyond the workplace to encompass all who might come into contact with an employee or an employee's clothing outside the workplace."). Finally, even though the California Court of Appeals considered the foreseeability of an injury when determining "duty" in a take-home exposure claim, it stated that, "even assuming a property owner can reasonably be expected to foresee the risk of latent disease to a worker's family members secondarily exposed to asbestos used on its premises, we must conclude strong public policy considerations counsel against imposing a duty of care on property workers for such secondary exposure . . . ." *Campbell*, 141 Cal. Rptr. 3d at 402-03. Notably, the court did not address foreseeability as the "key factor" in its determination.

In contrast to TVA's position, plaintiffs cite cases that are *actually* persuasive, because the courts cited by them placed an emphasis on the foreseeability of an injury, while also considering public policy. *See Satterfield*, 266 S.W.3d at 373-75

13

(noting that "Tennessee's courts rely heavily on forseeability when determining the existence and scope of a duty," and that "the existence of a duty to exercise reasonable care to avoid the risk of harm to another involves considerations of fairness and public policy"); *Olivio*, 895 A.2d at 1148 ("Foreseeability is significant in the assessment of a duty of care to another," and "[o]nce the ability to foresee harm to a particular individual has been established . . . considerations of fairness and policy govern whether the imposition of a duty is warranted.") (alterations supplied).

Still, TVA contends that Alabama would adopt the reasoning of courts in California and Georgia in holding that policy concerns weigh against the imposition of a duty under the circumstances present in this action, because the policy considerations surrounding the establishment of a new duty are substantial and have potentially far-reaching implications for individual litigants, the business community, and the courts.  This court does not find TVA's reasoning persuasive. As the Supreme Court of Tennessee recognized, there is no danger to the business community in finding that "a sophisticated [employer] that was aware of, or should have been aware of, the risk to others that could result from exposure to asbestos fibers, . . . knew its employees' work clothes contained significant quantities of asbestos fibers, and [] understood the danger of transmitting these asbestos fibers to others," owes a duty to family members in take-home exposure claims. *Satterfield*, 266 S.W.3d at 371; *see*

14

*also Olivo*, 895 A.2d at 1150 ("Although Exxon Mobil fears limitless exposure to liability based on a theory of foreseeability built on contact with Anthony's asbestos-contaminated clothing, such fears are overstated. The duty we recognize in these circumstances is focused on the particularized foreseeability of harm to plaintiff's wife, who ordinarily would perform typical household chores that would include laundering the work clothes worn by her husband."); *Simpkins*, 929 N.E.2d at 1266 (dismissing policy concerns of "limitless liability to 'the entire world'" because "the scope of liability will be inherently limited by the foreseeability of the harm").

Thus, the policy considerations in recognizing a duty to family members of employees in take-home asbestos exposure cases does not outweigh the foreseeability of the injury in a jurisdiction like Alabama that relies heavily on foreseeability in its duty analysis. Accordingly, TVA owed a duty of care to Mrs. Bobo.

**B**.     **Causation in fact**

TVA next contends that its purported breach of duty was not the cause of Barbara Bobo's mesothelioma, because there purportedly is no evidence that her husband, James Bobo, was exposed to asbestos while working at the Plant.[30] *See Blackston v. Shook & Fletcher Insulation Co.*, 764 F.2d 1480, 1481 (11th Cir. 1985)

---

[30] Doc. no. 128 (TVA's Brief in Support of Motion for Summary Judgment), at 4.

("Regardless of the theory of liability in [asbestos-related injury tort] cases, the threshold for every theory is proof that an injured plaintiff was exposed to asbestos-containing products for which the defendant is responsible."). In support, TVA asserts that James Bobo's testimony in a related Texas asbestos lawsuit is not admissible, and that Jimmy Myhan's testimony is insufficient to prove that James Bobo was exposed to asbestos at the Browns Ferry Nuclear Power Plant. The court addresses both assertions below.

### 1.    James Bobo's testimony

TVA asserts that James Bobo's deposition testimony from an earlier Texas asbestos lawsuit styled *Holcomb, et al. v. Owens-Corning Fiberglas Corp., et al.*, No. 94-09-5179-A (District Court Cameron County, Texas Sept. 30, 1994), is not admissible because "TVA was not a party to the earlier lawsuit and no asbestos product defendant in the earlier lawsuit had a similar motive to TVA to develop testimony with respect to the premises liability claims asserted" in this action.[31]  As plaintiffs correctly note in response, James Bobo's deposition testimony does not satisfy Federal Rule of Civil Procedure 32(a)(1)(A), which allows a deposition to be used against a party when "the party was present or represented at the taking of the deposition or had reasonable notice of it."  Fed. R. Civ. P. 32(a)(1)(A).  Plaintiffs

---

[31] Doc. no. 128 (Brief in Support of Motion for Summary Judgment), at 8.

contend, nevertheless, that at the summary judgment stage, depositions, "even those taken without notice to or the presence of the [] moving party on summary judgment," are admissible "to the extent that the deponent's testimony was competent, based on personal knowledge, and set out facts admissible at trial." *Vondriska v. Cugno*, 368 F. App'x 7, 9 (11th Cir. 2010) (citing *Bozeman v. Orum*, 422 F.3d 1265, 1267 n.1 (11th Cir. 2005) (holding that sworn statements before a court reporter where non-moving party was neither noticed nor present satisfied requirements of Rule 56(c)); 8A Wright, Miller & Marcus, *Federal Practice and Procedure* § 2142 (2d ed. 1994) (stating that deposition testimony is "at least as good as an affidavit and should be usable whenever an affidavit would be permissible")).

Unfortunately for plaintiffs, while James Bobo's deposition testimony appears to be competent and based upon personal knowledge, it constitutes hearsay, *see* Fed. R. Evid. 801(c),[32] which "is not admissible unless any of the following provides otherwise:  a federal statute; [the Federal Rules of Evidence]; or other rules prescribed by the Supreme Court." Fed. R. Evid. 802.  Federal Rule of Evidence 804(b)(1)(B) provides that the former testimony of a "declarant [that] is unavailable as a witness" is admissible, so long as the testimony:

---

[32]"'Hearsay' means a statement that:  (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement." Fed. R. Evid. 801(c).

17

(A) was given as a witness at a trial, hearing, or *lawful deposition*, whether given during the current proceeding or a different one; and

(B) is now offered against a party who had—or, in a civil case, whose predecessor in interest had—*an opportunity and similar motive to develop it by direct, cross-, or redirect exam.*

Fed. R. Evid. 804(b)(1)(B) (alteration and emphasis supplied).

Here, plaintiffs have not shown that the products defendants in the Texas lawsuit had a similar motive to develop James Bobo's testimony regarding TVA's liability.  Indeed, as TVA notes, the products defendants in the Texas action did not question James Bobo regarding the following topics that are certainly relevant to plaintiffs' claims in this action: (1) the amount of dust that would collect on his work clothing; (2) whether any procedures existed to remove the dust from his work clothing; (3) what he did with his work clothes at the end of a workday; (4) potential other sources of dust that might have accumulated on his work clothes; (5) working conditions and environmental control measures present at Browns Ferry during his employment; and (6) specific locations within Browns Ferry where he allegedly was exposed to asbestos-contaminated insulation.[33]   Thus, James Bobo's deposition testimony constitutes inadmissible hearsay.

Even so, it has long been the rule in the Eleventh Circuit that "a district court

---

[33] Doc. no. 128 (Brief in Support of Motion for Summary Judgment), at 10-11 n.4.

may consider a hearsay statement in passing on a motion for summary judgment if the statement could be 'reduced to admissible evidence at trial' or 'reduced to admissible form.'" *Macuba v. Deboer*, 193 F.3d 1316, 1323 (11th Cir. 1999) (collecting cases). However, James Bobo is now deceased, and plaintiffs have produced no evidence demonstrating that his deposition testimony could be reduced to admissible form at trial. Accordingly, the court will not consider James Bobo's deposition testimony in ruling on TVA's motion for summary judgment.

## 2.   **Jimmy Myhan's testimony**

TVA also asserts that Jimmy Myhan's testimony cannot prove that James Bobo was exposed to asbestos, because Myhan could not identify the manufacturer of the insulation products that James Bobo worked with, nor was Myhan aware of the presence of asbestos at the Browns Ferry Nuclear Plant at the time he worked for TVA.[34] Indeed, Myhan admits that he doesn't know whether James Bobo worked with insulation that contained asbestos, only that he *believes* the insulation *may* have contained asbestos.[35] It is clear that Myhan's testimony regarding the asbestos content of the insulation products James Bobo worked with is mere speculation, and cannot support plaintiffs' contention that James Bobo was exposed to asbestos while

---

[34] Doc. no. 128 (Brief in Support of Motion for Summary Judgment), at 11-12.

[35] Doc. no. 83-4 (Deposition of Jimmy Myhan), at 90-91.

working at the Browns Ferry Nuclear Plant. *See* Fed. R. Evid. 602 ("A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter."). Accordingly, the court will not consider his testimony regarding whether the insulation contained asbestos in ruling on TVA's motion for summary judgment.

Even so, the court may consider Myhan's testimony that a majority of the insulation James Bobo worked with at the Browns Ferry Nuclear Plant was white in color, because that testimony is based on Myhan's personal knowledge.

### 3.    Other Evidence

Regardless of whether James Bobo's testimony or Myhan's testimony regarding asbestos is admissible, plaintiffs still have produced sufficient evidence showing that James Bobo was exposed to asbestos dust while working at the Browns Ferry Nuclear Plant. For example, TVA admitted that it "purchased asbestos-containing thermal insulation for use at the Browns Ferry Nuclear Plant in Athens, Alabama when the Plant was constructed in approximately 1966," and every subsequent year until at least 1980.[36] Indeed, TVA's own 1967 "Safety Manual" acknowledged that asbestos was "[a] component of many thermal insulation

---

[36] Doc. no. 150-4 (TVA Answers to Second Set of Discovery), at 7-10. The interrogatories only asked TVA whether it purchased asbestos-containing thermal insulation for use at the Browns Ferry Nuclear Plant up until 1980. *Id.*

materials" used at the plant, and that "[e]xposures occur during application and removal of insulation."[37] Steve Brown, another TVA employee, testified that there was still asbestos insulation at the Browns Ferry Nuclear Plant when he left in 1991.[38] Frank Mecke, who installed thermal insulation at the Browns Ferry Nuclear Plant, testified that the insulation he installed contained asbestos, and most of it was white in color.[39] Myhan testified that "some" of the insulation James Bobo worked with was brown, but "a lot of it was white."[40] Moreover, TVA's own expert, Dr. Martin Barrie, testified that the insulation James Bobo swept up "probably was asbestos."[41] From this evidence, a reasonable jury could conclude that James Bobo was exposed to asbestos while working at the Browns Ferry Nuclear Plant. Accordingly, plaintiffs can prove that TVA's breach of duty was the cause in fact of Barbara Bobo's

---

[37] Doc. no. 145-3 (TVA 1967 Safety Manual), at ECF 5. "ECF" is the acronym for "Electronic Case Filing," a system that allows parties to file and serve documents electronically. *See Atterbury v. Foulk*, No. C-07-6256 MHP, 2009 WL 4723547, *6 n.6 (N.D. Cal. Dec. 8, 2009). Bluebook Rule 7.1.4 *permits* citations to the "page numbers generated by the ECF header." *Wilson v. Fullwood*, 772 F. Supp. 2d 246, 257 n.5 (D.D.C. 2011) (citing *The Bluebook: A Uniform System of Citation* R. B. 7.1.4, at 21 (Columbia Law Review Ass'n *et al.*, 19th ed. 2010)). Even so, the Bluebook recommends "against citation to ECF pagination in lieu of original pagination." *Wilson*, 772 F. Supp. 2d at 257 n.5. Thus, unless stated otherwise, this court will cite the original pagination in the parties' pleadings. When the court cites to pagination generated by the ECF header, it will, as here, precede the page number with the letters "ECF."

[38] Doc. no. 150-7 (Deposition of Steve Brown), at 16.

[39] Doc. no. 150-5 (Deposition of Frank Mecke), at 11-12, 15, 17, 20, 44, & 53.

[40] Doc. no. 83-4 (Deposition of Jimmy Myhan), at 46.

[41] Doc. no. 150-8 (Deposition of Dr. Martin Barrie), at 44.

mesothelioma.[42]

### C.   Proximate causation

Finally, TVA contends that its purported breach of duty was not the proximate cause of Mrs. Bobo's mesothelioma.[43]   For negligent conduct to be actionable, plaintiffs must generally establish proximate causation by showing that "(1) [defendant's] conduct naturally and probably brought about the harm and (2) the harm would not have happened without the conduct." 2 *Alabama Pattern Jury Instructions — Civil* § 33.00 (3d ed. 2013) (alteration supplied).  *Accord Lingefelt*, 57 So. 3d at 122-23 ("Proximate cause is an act or omission that in a natural and continuous sequence, unbroken by any new independent causes, produces the injury and without which the injury would not have occurred.") (quoting *Martin v. Arnold*, 643 So. 2d 564, 567 (Ala. 1994)); *Vines v. Plantation Motor Lodge*, 336 So. 2d 1338, 1339 (Ala. 1976) ("Liability will be imposed only when negligence is the proximate cause of injury; injury must be a natural and probable consequence of the negligent act or omission which an ordinarily prudent person ought reasonably to foresee would result in injury."); *City of Mobile v. Havard*, 268 So. 2d 805, 810 (Ala. 1972) ("For an act to constitute actionable negligence, there must be not only some causal connection

---

[42] TVA does not challenge plaintiffs' contention that she laundered her husbands work clothes and was exposed to any asbestos contained therein.

[43] Doc. no. 128 (TVA's Brief in Support of Summary Judgment), at 16.

between the negligent act complained of and the injury suffered, but also the connection must be by a natural and unbroken sequence, without intervening, efficient causes, so that, but for the negligence of the defendant, the injury would not have occurred.").

Although the parties appear to agree that the foregoing standards for proximate cause are appropriate in most negligence actions, they disagree regarding whether Alabama would apply traditional "but-for" causation, or "substantial factor" causation, where multiple exposures to a toxic agent, such as asbestos, combine to produce the plaintiffs' injuries. No Alabama courts have addressed this issue. *See Holland v. Armstrong Intern., Inc.*, 2012 WL 7761438, at *1 (E.D. Pa. Nov. 28, 2012). Thus, the court must determine which causation standard an Alabama court would apply to determine proximate causation.

Plaintiffs assert that the substantial factor causation standard should govern asbestos cases involving multiple exposures.  This standard is set forth in § 431 of the Restatement (Second) of Torts as follows:  "The actor's negligent conduct is a legal cause of harm to another if (a) his conduct is a *substantial factor* in bringing about the harm, and (b) there is no rule of law relieving the actor from liability because of the manner in which his negligence has resulted in the harm."  Restatement (Second) of Torts § 431 (emphasis added). The Supreme Court of Alabama applied the

23

substantial factor standard as set forth in § 431 in *Sheffield v. Owens-Corning Fiberglass*, 595 So. 2d 443, 450 (Ala. 1992).  In *Sheffield*, former seamen sued shipowners and manufacturers of asbestos-containing products for exposure to those products while serving on board their respective ships. *Id.* at 446.  However, this case was governed by principles of maritime law, which are "'[d]rawn from state and federal sources' and represent an 'amalgam of traditional common-law rules, modifications of those rules, and newly created rules.'" *Id.* at 450 (quoting *East River S.S. Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858, 864-65 (1986)) (alteration in original).  Therefore, the Supreme Court of Alabama followed other admiralty courts by relying on the Restatement (Second) of Torts for general standards of proof of causation.  *Id.* (collecting cases).

Although plaintiffs acknowledge that *Sheffield* was decided under maritime law, they argue that the Supreme Court of Alabama relied on *Sheffield* in the case of *Owens-Corning Fiberglass Corp. v. Gant*, 662 So. 2d 255, 256 (Ala. 1995).  Indeed, in rejecting the argument that the plaintiffs failed to prove sufficient exposure to the defendant's asbestos-containing product, the court cited approvingly to the *Sheffield* opinion regarding the issue of proximate causation. Unfortunately, the court in *Gant* never expressly stated that *Sheffield's* causation analysis had been adopted as the appropriate standard under Alabama law. Although *Gant* is indicative that Alabama

24

would adopt the substantial factor test, it does not settle the issue.[44]

TVA, on the other hand, contends that there is no reason to deviate from Alabama's traditional but-for causation standard in an asbestos case in which plaintiffs allege that a premises owner acted negligently, and TVA asserts that Alabama would adopt the following adaptation of the but-for standard in a multiple exposure source toxic tort case:  "(1) that the illness would not have occurred without exposure to the defendant's asbestos or (2) that exposure to the defendant's asbestos was independently sufficient to cause the illness."[45]  *See*, *e.g.*, *Ford Motor Co. v. Boomer*, 736 S.E.2d 724 (Va. 2013); *Wilcox v. Homestake Mining Co.*, 619 F.3d 1165, 1169 (10th Cir. 2010) (applying New Mexico but-for causation standard to a toxic tort case involving radiation exposure).  However, that appears to be the minority position in asbestos cases. *See, e.g., Lindstrom v. A-C Product Liability*

---

[44]Plaintiffs also note that the Court of Appeals of Texas relied on the *Sheffield* opinion to apply the substantial factor test as the appropriate causation standard under Alabama law.  *North American Refractory Co. v. Easter*, 988 S.W.2d 904, 908, 911 (Tex. App. 1999).  However, the Texas court failed to take note of the fact that the *Sheffield* opinion was decided under federal maritime law. Plaintiffs also note that the Supreme Court of Alabama applied a "contributing cause" standard in a workers' compensation case involving toxic exposure not exclusively occurring in the workplace in *Ex parte Valdez*, 636 So. 2d 401, 403 (Ala.  1994). However, while the Alabama Workers' Compensation Act requires plaintiffs to establish that the workplace was the "proximate cause" of an injury, "it is well established that [Alabama] courts have historically rejected a 'but-for' test in workers' compensation cases in favor of a 'causal-connection' test." *Ex parte Patton*, 77 So. 3d 591, 594 (Ala. 2011). Thus, the Supreme Court of Alabama's rejection of the but-for test in a Workers' Compensation case involving toxic exposure in no indication that the court would apply the substantial factor causation standard to a negligence action involving toxic exposure.

[45] Doc. no. 128 (TVA's Brief in Support of Motion for Summary Judgment), at 17.

*Trust*, 424 F.3d 488, 492 (6th Cir. 2005) (applying substantial factor test under maritime law); *Lohrmann v. Pittsburgh Corning Corp.*, 782 F.2d 1156, 1162-63 (4th Cir. 1986) (upholding substantial factor test in a Maryland asbestos case); *Rando v. Anco Insulations, Inc.*, 16 So. 3d 1065, 1088 (La. 2009); *Borg-Warner Corp. v. Flores*, 232 S.W.3d 765, 773-74 (Tex. 2007); *Rutherford v. Owens-Illinois, Inc.*, 941 P.2d 1203, 1219 (Cal. 1997); *Thacker v. UNR Indus., Inc.*, 603 N.E.2d 449, 455 (Ill. 1992). Further, TVA's position does not "recognize the proof difficulties accompanying asbestos claims. The long latency period for asbestos-related diseases, coupled with the inability to trace precisely which fibers caused disease and from whose product they emanated, make this process inexact." *Flores*, 232 S.W.3d at 772. As one court has noted:

> Courts throughout the country . . . have struggled with how a plaintiff in an asbestos case can fairly meet the burden of production with regard to causation. Several factors complicate the analysis . . . . First, because asbestos fibers are friable and may float in the air, it is possible that even those who do not come into direct physical contact with asbestos products may suffer from asbestos poisoning. Second, due to the microscopic size of asbestos fibers, asbestos cannot always be seen drifting in the air or entering a plaintiff's body. The small size of these fibers also means that asbestos fibers from different sources are generally indistinguishable from one another, even when removed from a plaintiff's body and examined through a microscope. Third, asbestos injury takes an extended time period to manifest itself. Evidence presented to the jury showed that the time between when asbestos fibers are first inhaled and when scarring in the lungs becomes symptomatic is commonly between 25 and 30 years. This means that a plaintiff

injured by asbestos fibers often does not know exactly when or where he was injured and therefore is unable to describe the details of how such injury occurred. In addition, we note that even when a plaintiff is able to narrow the circumstances of exposure to a single event or circumstance, the extended passage of time between exposure and illness often means that witnesses are no longer readily available or that the memories of those who are available have become unreliable.

*Thacker*, 603 N.E.2d at 455-56.

In light of these issues, as well as Alabama's apparent extension of *Sheffield* into multiple-exposure asbestos cases decided under Alabama law, the court presumes that Alabama would apply the substantial factor causation analysis in this case. Nonetheless, TVA argues that it is entitled to summary judgment under this standard because plaintiffs purportedly "failed to quantify [Barbara Bobo's] non-occupational exposures to asbestos originating from the Browns Ferry Nuclear Plant necessary to quantify her increased risk of developing mesothelioma from those exposures in comparison to her risk of developing mesothelioma from her other exposures to asbestos including, for example, her non-occupational exposures to asbestos through laundering her husband's work clothing during the 1964-1975 period that he worked at the Alabama Wire Plant."[46] In other words, TVA contends that plaintiffs have provided no evidence that could help the finder of fact to decide whether the "relative risk" of mesothelioma from Mrs. Bobo's exposure to asbestos from the Browns Ferry

---

[46] Doc. no. 128 (TVA's Brief in Support of Summary Judgment), at 16-17 n.6.

Nuclear Plant was "substantial."

Contrary to TVA's contention, an exposure can be a "substantial contributing factor" to mesothelioma regardless of its "relative risk" to other exposures. As the Supreme Court of Alabama held:

> evidence that [a plaintiff] was "close" to those who worked with [asbestos-containing] insulation . . . coupled with expert testimony that "each and every exposure to asbestos contributes in a causally significant and substantial manner to asbestos-related lung impairment," creates a triable issue as to whether airborne asbestos fibers from [the defendant's] product was a substantial factor in producing the disease from which [the plaintiff] claims to suffer.

*Sheffield*, 595 So. 2d at 456. Here, Dr. Eugene Mark, plaintiffs' expert, considered whether Barbara Bobo was exposed to asbestos at a level where diseases, such as mesothelioma, have previously occurred.[47]   In making that determination, he examined whether Barbara Bobo's exposures were similar to "exposures that have been documented to cause diffuse malignant mesothelioma in others . . . ."[48] Based on more than thirty different studies and documents, Dr. Mark concluded that there is no known threshold or safe level of asbestos exposure, and that "a documented history of brief or low level exposure is sufficient to consider a mesothelioma as

---

[47] Doc. no. 125 (Expert Report and Declaration of Eugene Mark, M.D.), at 10-21.

[48] *Id*. at 10 (internal citation omitted). Dr. Mark defined "significant" exposures as the type of exposures which have been proven by science to cause mesothelioma, including those rising to the level of occupational or para-occupational exposures.

asbestos induced."[49] Therefore, Dr. Mark opined that "it is the totality of significant exposures to asbestos that is the cause of the disease."[50] In applying this rationale to Barbara Bobo's case, Dr. Mark concluded that she had a cumulative asbestos exposure that was substantial and in the range of exposures shown in the cited literature to cause diffuse malignant mesothelioma.[51]  Therefore, Dr. Mark ultimately found "with a reasonable degree of medical certainty that Mrs. Bobo's exposure to asbestos fibers brought home on her husband's clothing while he worked at TVA was a substantial contributing factor and a medical cause in the development of her diffuse malignant mesothelioma of the pleura."[52] Based on Dr. Mark's findings, plaintiffs have presented sufficient evidence to establish that Barbara Bobo's exposure to asbestos from the Browns Ferry Nuclear Plant was a substantial factor in bringing about her mesothelioma and, consequently, the proximate cause of her injury.

## IV.  CONCLUSION

Accordingly, for the reasons discussed in this opinion, TVA's motion for summary judgment is DENIED.  This case will be scheduled for pretrial conference

---

[49] *Id.* at 15.

[50] *Id.* at 26.

[51] *Id.* at 15-20

[52] *Id*. at 27.

by a separate written order.

      **DONE** and **ORDERED** this 25th day of August, 2014.

_____
United States District Judge